UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**DEBORAH P.,**

    **Plaintiff,**

    v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 2:20-cv-12797
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Deborah P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On March 17, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since August 26, 2016. R. 62, 74, 146–52. The application was denied initially and upon reconsideration. R. 75–79, 83–85. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 86–100. Administrative Law Judge ("ALJ") Dennis O'Leary held a hearing on March 21, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 30–53. In a decision dated April 8, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 26, 2016, the alleged disability onset date, through the date of that decision. R. 16–24. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 15, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 10, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 10.[2] On that same day, the case was reassigned to the undersigned. ECF No. 11. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

    **B.**    **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.     ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 39 years old on her alleged disability onset date. R. 23. She meets the insured status requirements of the Social Security Act through June 30, 2022. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 26, 2016, her alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's lumbar radiculopathy and anxiety were severe impairments. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18–20.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 20–23. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a food service manager and secretary. R. 23.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 120,000 jobs as an order clerk—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 23–24. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 26, 2016, her alleged disability onset date, through the date of the decision. R. 24.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly

applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 14, 2018, Charles F. Asta, M.D., Plaintiff's treating physician, completed a three-page, fill-in-the-blank and check-the-box form entitled "Interrogatory – Neurological Impairment." R. 611–13. Dr. Asta, who had treated Plaintiff for ten months beginning on February 6, 2017, diagnosed lumbar radiculopathy. R. 611. Dr. Asta noted that Plaintiff first presented with complaints of sharp pain in the right lateral shin and right lateral calf area with right foot weakness, and that Plaintiff continues to experience that pain, along with associated right lumbar spine pain, right buttock pain, and right posterior thigh pain. *Id*. Dr. Asta checked the boxes marked "No" when asked whether Plaintiff suffered from any of the following neurological abnormalities: aphasia, headaches, apraxia, dysarthria, blackouts or loss of consciousness, confusion or disorientation, difficulty swallowing, persistent disorganization of motor function in extremities, loss of or diminished coordination, muscle weakness, muscle atrophy, nausea or vomiting, ataxic gait, steppage gait, bizarre gait, positive Romberg's sign, Brudzinki's sign, Kernig's sign, slurred speech, weak or monotonous voice, impaired ability to speak or communicate effectively, hearing loss, vertigo, diplopia, drowsiness, impairment in ability to think, and impairment in memory. R. 611–13. According to Dr. Asta, Plaintiff could sit and stand for 15 minutes at one time but could not sit or stand for a workday. R. 613 Plaintiff could lift up to five pounds occasionally, but not frequently. *Id.*

V.    DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly weigh Dr. Asta's opinions. *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 13–18; *Plaintiff's Reply Brief*, ECF No. 19, pp. 1–4. Plaintiff's arguments are not well taken.

A claimant's RFC is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform simple and repetitive sedentary work. R. 20. In reaching this determination, the ALJ detailed years of record evidence, including, *inter alia*, the facts that Plaintiff sustained an injury to her right foot in August 2016, following which Plaintiff underwent arthroscopic surgery with

some immediate relief; that Plaintiff complained of right dorsal foot pain in January 2017 and a physical examination revealed minor reductions in strength in both lower extremities and slight difficulty with right heel walking, but that range of motion was within functional limits; that Plaintiff attended 10 physical therapy sessions during which she was reported as continuing to make good progress in ankle mobility, passive range of motion, and strength; that diagnostic testing showed moderate findings and a February 2017 MRI of Plaintiff's lumbar spine revealed an annular disc bulge at the L5 to S1 regions with moderate narrowing of the neural foramina bilaterally and mild annular disc bulges at the T1 though L3 regions; that a MRI of Plaintiff's ankle revealed tendonitis and tendosynovitis but no discrete tendon tear, and diffuse soft tissue edema, but no occult fracture; that Plaintiff was diagnosed with lumbar radiculopathy in March 2017; that a February 2018 MRI of Plaintiff's lumbar spine again revealed moderate findings, including disc herniation in the L4 to L5 and L5 to S1 regions; that physical examinations through the relevant time period revealed mild to moderate findings; that a September 2018 physical examination revealed mild distress with no limitations in her upper extremities and full strength in the lower extremities, no foot drop, but some difficulty walking on tip toes; however, Plaintiff could bend forward 50 degrees and her gait was steady but somewhat wide based walking independently; she had negative straight leg raise on the left but positive on right, decreased sensation on the right, and full strength in left; that Plaintiff underwent lumbar decompressed surgery in November 2018; and that physical examination following that surgery revealed normal range of motion and Plaintiff reported that she was well recovered and her BMI was also reduced from 35 to 27. R. 21−22. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

Plaintiff, however, challenges the ALJ's consideration of Dr. Asta's opinion when crafting the RFC determination, arguing that the ALJ failed to properly weigh this opinion. *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 13‒18; *Plaintiff's Reply Brief*, ECF No. 19, pp. 1‒4. This Court disagrees. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[3] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the

---

[3] As previously noted, Plaintiff's claim was filed on March 17, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

11

patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the

government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In the instant case, the ALJ specifically considered Dr. Asta's opinion, but assigned it "little weight":

> Similarly the undersigned has assigned little weight to the opinion of the claimant physician Dr. Asta (Exhibit 10F). He reported that the claimant had lumbar radiculopathy with no reported neurological abnormalities, disorganization of motor function, or loss of or diminished coordination. Despite those findings he concluded that the claimant could not stand sit or walk for 15 min and could not lift more than 5 pounds. This conclusion is internally inconsistent and inconsistent with the medical evidence demonstrating moderate limitations but not the severity that the doctor claims.

R. 23. Substantial evidence supports the ALJ's evaluation of Dr. Asta's opinion. *See* 20 C.F.R. § 404.1527(c); *Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) (finding that the ALJ "appropriately gave less weight" to medical opinions where, *inter alia*, the ALJ discounted a physician's opinion as "inconsistent with the record evidence[,]" including that physician's "own findings that [the plaintiff] maintained normal grip strength and intact reflexes"); *Smith v. Astrue*, 359 F. App'x 313, 316 (3d Cir. 2009) (concluding that, where the treating source's "medical opinion is contradicted by several pieces of evidence in the record and also contains internal inconsistencies, it is not entitled to the level of deference otherwise

13

accorded to a treating physician's opinion"); *Wimberly v. Barnhart*, 128 F. App'x 861, 863 (3d Cir. 2005) (holding that the ALJ did not err by refusing to assign controlling weight to a treating physician's opinion that "was itself internally inconsistent").

Plaintiff nevertheless contends that Dr. Asta's treatment notes contain findings that support his opinion, including decreased pinprick sensation in the medial right foot, an antalgic gait with a limp, mild swelling of the right ankle and foot, minimal redness of the right foot, and possible hyperesthesia of the right lateral foot. *Plaintiff's Memorandum of Law*, ECF No. 17, p. 15 (citing R. 265, 597, 600, 603, 637, 639, 642); *Plaintiff's Reply Brief*, ECF No. 19, pp. 3–4 (same). Plaintiff also contends that she reported "some give way weakness in the right leg" and "experiencing 5 falls due to weakness." *Plaintiff's Memorandum of Law*, ECF No. 17, p. 15 (citing R. 596, 648); *Plaintiff's Reply Brief*, ECF No. 19, p. 4 (same). Plaintiff's arguments in this regard are not well taken. As a preliminary matter, in his opinion, Dr. Asta does not refer to these complaints, which are, in any event, inconsistent with the neurologic findings in his opinion. R. 611–13. In addition, several of the treatment notes to which Plaintiff cites pre-date by months Dr. Asta's January 14, 2018, opinion. *See* R. 265 (dated February 6, 2017), 597 (dated June 27, 2017), 600 (dated May 15, 2017), 603 (dated April 3, 2017). Moreover, to the extent that Plaintiff relies on Dr. Asta's recording of Plaintiff's own subjective complaints in the treatment notes, it must be recognized that the mere memorialization of a claimant's subjective complaints in a medical record will not serve to transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d

Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). In any event, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her - or this Court's - own factual determination. *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611.

Plaintiff also insists that the ALJ erred in concluding that Dr. Asta's opinion was internally inconsistent, and complains that the ALJ "failed to mention any of the probative medical evidence from Dr. Asta's notes that are not consistent [sic] with his opinion[,]" including the fact that "Dr. Asta noted multiple times [that] Plaintiff had great difficulty with prolonged standing and sitting due to her pain." *Plaintiff's Memorandum of Law*, ECF No. 17, p. 16 (citing R. 264, 596, 599, 602, 636). Plaintiff's argument is not well taken. In advancing this argument, Plaintiff again relies on her own subjective complaints, which are simply recorded in Dr. Asta's treatment notes; they do not amount to objective findings or medical opinions. *See Hatton*, 131 F. App'x at 879; *Morris*, 78 F. App'x at 824–25; *Famularo*, 2021 WL 613832, at *7.

Finally, Plaintiff argues that the ALJ also erred in concluding that Dr. Asta's opinion was inconsistent with other medical evidence demonstrating only moderate limitations; she contends

15

that the ALJ "failed to cite to any of the other probative evidence that was inconsistent with Dr. Asta's opinion." *Plaintiff's Memorandum of Law*, ECF No. 17, pp. 16–18 (citations omitted). However, as detailed above and reading the opinion as a whole, the ALJ expressly noted the moderate limitations in the record that were inconsistent with Dr. Asta's extreme opinion. R. 21 (detailing "diagnostic evidence show[ing] moderate finding[s,]" including February 2017 and February 2018 MRIs, and "mild to moderate physical examinations throughout the relevant time period"), 22 (noting that "[p]hysical examination following that [November 2018 lumbar decompression] surgery revealed normal range of motion and reported that she was well recovered" and further explaining that "the clinical and diagnostic evidence supports a finding that the intensity, persistence and limiting effects of the physical symptoms cause moderate functional limitations"). Moreover, as previously noted, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson*, 497 F. App'x at 201; *see also Chandler*, 667 F.3d at 359; *Hatton*, 131 F. App'x at 880.

In short, for all these reasons, the Court concludes that the ALJ's findings regarding Plaintiff's RFC are consistent with the record evidence and enjoy substantial support in the record, as does his consideration of Dr. Asta's opinion.

## VI.   CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  April 19, 2022                             *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE